IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN THE MATTER OF | : | |
| PETER JOHN PSARRAS CASTRO, | : | CASE NO. 00-12496(SEK) |
| DEBTOR | : | CHAPTER 13 |
| PETER JOHN PSARRAS CASTRO, | : | |
| PLAINTIFF | : | ADV. PROC. 06-0070 |
| V. | : | |
| UNITED STATES OF AMERICA, ON BEHALF OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | : | |
| | : | |
| DEFENDANTS | : | |

**FILED & ENTERED**

2 1 FEB 2007

CLERK
U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

## OPINION AND ORDER

The United States of America, on behalf of its Department of Health and Human Services (HHS), filed a motion for summary judgment seeking dismissal debtor's complaint to determine the dischargeability of a "HEAL" student loan. HHS argues this type of "HEAL" student loan does not meet the requirements for discharge set forth in 42 U.S.C. § 292f(g), and therefore cannot be discharged. Plaintiff claims an issue of material fact precludes entry of summary judgment, and the filing of this petition did not toll the seven year period requirement of 42 U.S.C. § 292f(g)(1). We grant HHS' motion, entering a partial final judgment in its favor, for reasons that follow.[1]

For purposes of this opinion, we adopt as our own HHS'



---

[1] We severed this cause of action from the one concerning the dischargeability of the "SMART" loan originally owed to the N.Y.S. Higher Education Services Corp.

explanation of the "HEAL" student loan program and its statement of uncontested facts attached as exhibit A, adding the following. When Plaintiff filed for bankruptcy protection under Chapter 13 on October 30, 2000, the "HEAL" loans had been in repayment status for 1,302 days equivalent to approximately to 3.6 years. Plaintiff completed the bankruptcy plan payments, but the order of discharge has not been entered.

### *Discussion*

A. Is there a material fact in controversy precluding entry of summary judgment?

Summary judgment is warranted where the record viewed most favorably to non moving party, reveals that there is no genuine dispute as to any material fact and moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Blanchard v. Peerless, 958 F.2d 483, 485 (1st Cir. 1992). "The summary judgment machinery operates in two phases. First, the movant must make a preliminary showing that there is no genuine issue of material fact which requires resolution in the crucible of a trial. Once this showing has been made, the burden shifts to the non-movant to demonstrate, through specific facts, that a trial worthy issue remains." (citations omitted) Cadle Company v. Hayes, 116 F. 3d 957, 960 (1st Cir. 1997).



In an attempt to show the existence of a factual controversy worthy of trial, Plaintiff alleges under oath that Sallie Mae, Inc. offered to consolidate his "HEAL" loans, and he remembers

filling out the corresponding application.[2]  Plaintiff offered no documentary evidence to substantiate his statement under oath.

HHS denies the creation of a new loan through consolidation of the "HEAL" loans as shown by the affidavit of its senior analyst, and the  "HEAL" loans' promissory notes accompanied by detailed accounting produced by HHS.

We disagree with plaintiff's contention that his claim of loan consolidation creates a factual controversy preventing us from entering judgment summarily.  The best evidence rule makes Plaintiff's recollection of the loan consolidation an inadmissible claim.[3]  Inadmissible evidence cannot be considered when resolving an opposed motion for summary judgment. White t/a White's News, et al., v. The Hearst Corporation, et al., 669 F. 2d 14 (1st Cir. 1982); Noviello v. City of Boston, 398 F. 3d 76 (1st Cir., 2005); Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2727 n. 66.  Therefore, Plaintiff's recollection executed under oath attempting to show there is a factual dispute requiring "a jury or judge to resolve the parties' differing versions of the truth at trial" cannot defeat HHS' motion for summary judgment.  Hahn v. Sargeant, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904, 96 S. Ct. 1495, 47 L. Ed. 2d 754 (1976).

B. Did filing for bankruptcy protection toll the seven year



---

[2] Although no stated clearly, Plaintiff's attempts to argue the existence of a new consolidated loan in order to exclude this new loan from the provisions of 42 U.S.C. §292f(g).

[3] Fed. R. Evid. 1002.

period required to discharge a "HEAL" loan under section 42 U.S.C. § 292f(g)?

Dischargeability of "HEAL" loans in this case is governed by 42 U.S.C. § 292f(g), which states:

> (g) Conditions for discharge of debt in bankruptcy. Notwithstanding any other provision of Federal or State law, a debt that is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted-
> (1) after the expiration of the seven-year period beginning on the first date when repayment of such loan is required, **exclusive of any period after such date in which the obligation to pay installments on the loan is suspended;**
> (2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and
> (3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

42 U.S.C. § 292f(g) (emphasis ours).

We could only find one case that interprets this statute, finding that the period during which a Chapter 13 debtor is protected by the automatic stay, suspends the obligation to pay installments on a student loan, thus the seven year period is tolled. Ellzey v. U.S. Dpt. of Health (In re Ellzey), 302 B.R. 385 (S.D.Ala. 2003). The court in Ellzey compared the language in § 292f(g) to former Bankruptcy Code § 523(a)(8), which provided for the dischargeability of a student loan if it "first became due more than 7 years (exclusive of any applicable suspension period) before the date of the filing of the petition". That court then applied the reasoning of cases under former § 523(a)(8) finding that the automatic stay in effect suspends a debtor's



4

obligation to repay a debt, and thus tolls the running of the seven year period. *See* <u>Moody v. ECMC, Inc. (In re Moody)</u>, 202 B.R. 720 (Bankr.S.D.Ohio 1996); <u>Washington v. ECMC (In re Washington)</u>, 318 B.R. 405 (Bankr.W.D.Tenn. 2004). "Otherwise, debtors could 'manipulate the amount of money they must repay before they file for bankruptcy and thereby gain the benefits of the suspension ... and still discharge the debt.'" <u>Washington</u> at 408 (citation omitted). We find these cases persuasive.

In this case, it is undisputed that, when Plaintiff filed bankruptcy, the "HEAL" loans had been in repayment status for 3.6 years.  Thereafter, the automatic stay has been in effect, and Plaintiff's obligation to pay the loans' installments has been suspended.  Therefore, we must conclude that the "HEAL" loans here have not been in repayment status for the seven year period required for dischargeability under 42 U.S.C. § 292f(g) (1). Therefore, as a matter of law, the complaint against HHS must be dismissed.

WHEREFORE, HHS's motion for summary judgment is granted and we shall enter a separate partial and final judgment accordingly.

SO ORDERED, in San Juan, Puerto Rico, on February 20, 2007.

SARA DE JESUS
U.S. Bankruptcy Judge

5

Judgment. Peter John Psarras Castro ("Plaintiff" or "Debtor"), filed his Complaint to Determine Dischargeability of Student Loans ("Complaint") on March 20, 2006, seeking to discharge certain educational loans, including his Health Education Assistance Loan (HEAL) loans. Contrary to the allegations in Debtor's Complaint, he has not meet the three statutory requirements for discharge of his HEAL loans. See Complaint ¶¶ 25, 26, 27. Specifically, Debtor's HEAL loan is statutorily barred from discharge under the applicable law, 42 U.S.C. § 292f(g), because seven years from the beginning of his repayment period has not expired. Accordingly, summary judgment must be granted to the United States.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmovant must produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

## III. THE HEAL PROGRAM

The HEAL loan program was established by the Health Professions Educational Assistance Act of 1976 (Pub. L. 94-484) and is presently codified at 42 U.S.C. § 292 et seq. The HEAL program is patterned after the Guaranteed Student Loan (GSL) Program and was enacted to meet the

2

needs of health professions students who were required to borrow substantially more than the borrowing limit under the GSL program. See H.R. REP. NO. 94-1612, at 109-111 (1976), reprinted in 1976 U.S.C.C.A.N. 5058, 5075-76. HEAL loans were made available to full-time graduate students in certain health profession schools, including schools of medicine, osteopathic medicine, dentistry, optometry, pharmacy, podiatric medicine, veterinary medicine, public health, and chiropractic or graduate programs in health administration or clinical psychology. 42 U.S.C. § 292b.

The HEAL program, which is administered by the Public Health Service of the HHS, used a triparty arrangement: the private lenders made the loans, the schools administered the application and disbursement, and HHS guaranteed the loans. See 42 C.F.R. Part 60. Lenders often sell their HEAL loans to the Student Loan Marketing Association (SLMA), a secondary loan market established by statute. 42 U.S.C. § 292(a)(c)(1).

Upon the borrower's graduation or departure from school the lender establishes a repayment schedule that begins the first day of the tenth month after the month the borrower ceases to be a full-time student in a HEAL school. 42 C.F.R. § 60.11(a). However, if the borrower enters an accredited residency program within nine months of leaving school and subsequently enters an accredited fellowship within nine months of completing the residency program, the borrower's repayment period begins on the first day of the tenth month after the month he ceases to be a participant in the fellowship program. 42 C.F.R. § 60.11(a)(i), (ii). After the repayment period begins, the borrower may request a forebearance, which provides an extension of time for making loan payments to prevent borrower from defaulting on his or her payment obligations. 42 C.F.R. § 60.37(a). The borrower has up to 33 years in which to repay the loan. 42 U.S.C. § 292d(a)(2)(B);

3

42 C.F.R § 60.11(b).

When a lender has complied with the terms of the HEAL insurance contract, the statute, and the regulations, HHS will pay of the lender's loss in principal and interest upon the borrower filing for bankruptcy under Chapter 13. 42 C.F.R. 60.40(c)(4). The borrower's notes are then assigned to HHS. 42 C.F.R. 60.1(c). As discussed in detail below, the dischargeability of a borrower's debt in bankruptcy is governed by 42 U.S.C. § 292f(g).

## IV. STATEMENT OF UNCONTESTED FACTS

From 1983 through 1987, Debtor, Peter John Psarras Castro, M.D., obtained four Health Education Assistance Loan (HEAL) loans to finance his medical education. Declaration of Barry M. Blum (Blum Decl.) ¶ 4. He graduated from medical school in June 1987 (Blum Decl. ¶ 4; Exhibit A) and subsequently completed a five-year surgical residency and then a one-year fellowship in surgical critical care in 1993. Complaint ¶¶ 10, 17.

These loans subsequently were purchased by the Student Loan Marketing Association (Sallie Mae, Inc.). Blum Decl. ¶ 4. On April 17, 1994, approximately ten months after Debtor's fellowship was completed, payment on these loans was first required. Blum Decl. ¶ 5. From April 17, 1994 through October 29, 2000, Debtor requested and received seven (7) periods of forbearance for a total of 1,087 days. Blum Decl. ¶ 5; see also Complaint ¶ 18.

On October 30, 2000, Debtor filed a Chapter 13 petition in bankruptcy in the United States Bankruptcy Court for the District of Puerto Rico (Case No. 00-12496-SEK). On November 21, 2000, Sallie Mae, Inc., filed an insurance claim with HHS. Under the HEAL program, HHS fully guarantees the loans to the holder of the notes in the event of death, default, bankruptcy, or permanent and total disability. On December 6, 2000, HHS paid the claim, thereby receiving an

4

assignment of the promissory notes. Blum Decl. ¶ 8.

Since the filing of Debtor's Chapter 13 Bankruptcy on October 30, 2000, an automatic stay has been in effect and no HEAL payments have been required or received during this period. Blum Decl. ¶ 12. On March 20, 2006, Debtor filed an Adversary Complaint seeking to discharge his HEAL loans in the United States Bankruptcy Court for the District of Puerto Rico (Case No. 06-00070).

## V. ARGUMENT

### A. DISCHARGE IN BANKRUPTCY OF DEBTOR'S HEAL LOANS IS GOVERNED EXCLUSIVELY BY THE HEAL STATUTE, 42 U.S.C. 292f(g).

Congress included a specific provision in the Public Health Services Act governing the discharge in bankruptcy of debts incurred as part of the HEAL program. Title 42, United States Code, Section 292f(g) states as follows:

(g) Conditions for discharge of debt in bankruptcy. Notwithstanding any other provision of Federal or State law, a debt that is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted –

(1) after the expiration of the seven-year period beginning on the first date when repayment of such loan is required, exclusive of any period after such date in which the obligation to pay installments on the loan is suspended;

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and

(3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt. 42 U.S.C. § 292f(g) (emphasis added).

These requirements are written in the conjunctive. All three requirements must be satisfied in each case. Case law clearly demonstrates a recognition of this fact. "Accordingly, when any

5